**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| JAY CONNOR, individually and on behalf of all others similarly situated,<br>　　　　Plaintiff,<br>　　vs.<br>Wilshire Real Estate Services, LLC<br>　　　　Defendant. | Case No. 2:24-cv-00645-RMG |

**PLAINTIFF'S BRIEF IN SUPPORT OF
MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM**

**INTRODUCTION**

Defendant Wilshire Real Estate Services, LLC ("Wilshire" or "Defendant") Counterclaim is nothing more than a contrived attempt to intimidate and bully a consumer for daring to hold it to account for its illegal telemarketing. The most basic of details to support the fraud claim are entirely absent, and as such the claim falls far short of alleging fraud with particularity under Rule 9(b) of the Federal Rules of Civil Procedure. It should therefore be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Particularity is required to allege fraud in order to protect individuals like Mr. Connor from the reputational harm that comes along with a public fraud allegation. The party alleging fraud must conduct a more thorough investigation than is typically required in order to ensure the claims have factual support. But here, Wilshire and its attorneys have either (1) lobbed this claim at Mr. Connor without even investigating the basic information for their fraud counterclaim; or (2) did an investigation but still don't have the facts to state a claim for fraud, and did not plead them. Either way, the Counterclaims do not meet the heightened pleading standard required by Rule 9.

Mr. Connor is not alleged to have done anything procedurally or substantively improper—all he has done is investigate who called his number on the National Do Not Call Registry and filed a complaint for damages under the TCPA. Accordingly, its abuse of process counterclaim

must also fail. Moreover, Wilshire's identical fraud counterclaims must be dismissed because they do not meet the requirements of Rule 9, let alone state a cognizable legal claim under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## LAW AND ARGUMENT

### I. Wilshire's abuse of process counterclaim fails as a matter of law.

Defendant first attempts to cast a counterclaim for "abuse of process," but fails to base this claim for relief by reference to any law, regulation, case law, or statute. And, without being tethered to the language of the common law, case, or statute, the Plaintiff is left to guess as to where the pled entitlement to relief originates. A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted may operate as a challenge to the legal sufficiency of a complaint in the nature of a *demurrer* and must be granted if the moving party mounts a successful challenge to "the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). It follows that a complaint that does not plead such statements demonstrating an entitlement to relief is properly dismissed for failure to state a cognizable legal claim.

Therefore, as an initial matter, the Defendant has not pled an adequate entitlement to relief to state a cognizable claim for relief under Rule 12(b)(6) because Wilshire pleads no violation of any law. Where, as here, the pleading party has not pled any facts which would entitle him to any relief under any legal theory plausibly suggested by the facts alleged, a complaint is properly dismissed for legal insufficiency under Rule 12(b)(6). *Harrison v. U.S. Postal Serv.*, 840 F.2d 1149, 1151 (4th Cir. 1988) (holding that district court properly dismissed complaint when no statutory provision was pled, let alone one that entitled plaintiff to relief).

Wilshire's failure to plead any legal or statutory violation renders the counterclaim deficient and warrants its dismissal on face.

As best the Plaintiff can tell, Wilshire attempts to plead an abuse of process counterclaim under South Carolina's state law abuse of process statute, the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. CODE § 15-36-10, *et seq*. As mentioned above, even to the extent that the Court construes the counterclaim as one under the Act, despite Wilshire pleading it nowhere in its complaint, the counterclaim is deficient because an action for violation of the Act must be brought in a separate proceeding after the conclusion of the case where the moving party has prevailed. S.C. CODE § 15-36-10(C)(1); *Walker-Davis v. Unique Caring Found., Inc.*, No. 9:23-CV-00156-DCN, 2023 WL 3061243, at *2 (D.S.C. Apr. 24, 2023) (dismissing abuse of process counterclaim and holding that "[T]he [FCPSA] does not provide a standalone cause of action, and any relief under the statute must be sought after trial."). Thus, the "clear weight of authority" counsels in favour of dismissing the present counterclaim "as unripe." *Id.*

And while a complaint under the FCPSA should normally be dismissed without prejudice with leave to raise such claims at the close of the case, assuming that the statute applies and the statutory prerequisites have been met, *Id.*, any abuse of process counterclaim here should be dismissed *with* prejudice because no amount of repleading will save the Defendant, because even if true, the allegations in the counterclaim do not show that the Plaintiff did anything wrong. As an initial matter, the calls placed to the Plaintiff were illegal at the moment they were sent, and not because of anything the Plaintiff said or did on them. 47 C.F.R. § 64.1200(c) (prohibiting "initiating" a call and not requiring a call to be answered). Even so, to the extent that the Court reads the counterclaim as alleging that Mr. Connor played along with Wilshire in order to identify them, that conduct is not improper and cannot stand as conduct giving rise to a

3

counterclaim for abuse of process, as the Fourth Circuit has held.

Consumers frequently play along with unsolicited telemarketing scripts like the one used by Wilshire to identify the callers, hold them accountable, and *discourage* future attempts at contact. Indeed, courts have held that the provision of false information, like a fake name, in order to protect a called party's privacy is part of the process of an individual seeking to privately enforce their rights under the TCPA. *Mey v. Castle L. Grp., PC*, No. 5:19-CV-185, 2020 WL 5648326, at *3 (N.D. W. Va. Sept. 22, 2020). What's more, playing pretend as an interested "consumer" does not constitute fraud or abuse of process. To the contrary, it is the very conduct that the TCPA encourages, as the Northern District of West Virginia stated in a nearly identical case to here, "The basis of the fraud claim, that Mey misrepresented her interest in the qualification process in order to trap the purported telemarketers into a lawsuit, is the type of conduct encouraged by the TCPA." *Castle L. Grp*, 2020 WL 5648326, at *3. The Fourth Circuit agreed, labeling such counterclaims for fraud as properly dismissed as "baseless." *Mey v. Phillips*, 71 F.4th 203, 210 (4th Cir. 2023).

A litany of other courts are in agreement. "But the telemarketers' admissions are not rendered invalid just because Mey (successfully) tricked them into (truthfully) revealing that they sold products for Lifewatch." *FTC v. Lifewatch Inc.*, 176 F. Supp. 3d 757, 771 (N.D. Ill. 2016); *see also Shelton v. Nat'l Gas & Elec., LLC*, No. 17-4063, 2019 U.S. Dist. LEXIS 59235, at *12 (E.D. Pa. Apr. 5, 2019) ("The fact that [Shelton] 'play[s] along' with telemarketing scripts to 'find out who [they] really are' is not as devious as Defendant suggests. A plaintiff must know the name of the telemarketer that violated the TCPA in order to bring suit against it"). And, as the Middle District of Tennessee stated:

> The statutory damages available under the TCPA are, in fact, specifically designed to appeal to plaintiffs' self-interest and to direct that self-interest toward the public good:

>  like statutory compensation for whistleblowers, they operate as bounties, increasing the incentives for private enforcement of law. Designing a cause of action with the purpose of enlisting the public in a law's enforcement scheme is a well-established tool that can be found in areas ranging from antitrust and civil rights law to environmental law and false claims. While these schemes do not eliminate the constitutional requirement of an injury-in-fact, neither do they impose an additional hurdle simply because the plaintiff may have a motive beyond mere compensation for his injury.

*Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1195–96 (2017).

For the foregoing reasons, the abuse of process counterclaim must be dismissed *with prejudice* because Wilshire has pled no facts giving it an entitlement to relief under any theory.

### II.    Wilshire failed to allege fraud with particularity as required by Fed. R. Civ. P. 9(b). The fraud counterclaims must therefore

A party who alleges fraud "must state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). A party's "lack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6)." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 n.5 (4th Cir. 1999). "The particularity requirement of Rule 9(b) is designed to discourage a 'sue first, ask questions later' philosophy." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011) (cleaned up). "Greater precomplaint investigation is warranted in fraud cases . . . because public charges of fraud can do great harm to the reputation of [an individual]." *Luminent Mortg. Cap., Inc. v. Merrill Lynch & Co.*, 652 F. Supp. 2d 576, 595 (E.D. Pa. 2009). Heightened pleading in the fraud context requires more than pleading the mere fact of a misrepresentation that might pass muster under Rule 8(a); Rule 9(b) requires the entity asserting fraud to conduct a more detailed investigation and not merely rely on allegations based on information or belief. *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1325 (Fed. Cir. 2009).

Rule 9(b) also serves to require parties pleading fraud to make such allegations at the

5

pleadings stage instead of stating that they will be revealed in discovery, particularly when the factual information to allege fraud is solely within the possession, knowledge, and control of the party alleging fraud. *See Pirelli*, 637 F.3d at 444. To comply with Rule 9(b), the party alleging fraud must allege, with particularity, the first paragraph of any newspaper story: the who, what, when, where, why, and how. *Harrison*, 176 F.3d at 784. Thus, the party alleging fraud must allege, at minimum, the time, place, and contents of the *false* representations, the identity of the person making the misrepresentation, and what he *obtained* thereby. *Id.* (emphasis added). In *Harrison*, the Fourth Circuit explained the fourfold purpose of Rule 9(b): to ensure that the defendant has enough information to formulate a defense, to protect defendants from frivolous suits, to eliminate fraud actions subject to discovery, and to protect defendants from harm to their goodwill and reputation. *Id.* (quoting *United States v. Blue Cross Blue Shield of Georgia, Inc.*, 755 F.Supp. 1055, 1056–57 (S.D.Ga.1990)).

It is well established that it is plainly insufficient under Rule 9(b) to plead fraud upon "information and belief." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) (citing *Segal v. Gordon,* 467 F.2d 602, 608 (2d Cir. 1972) for the proposition that "Rule 9(b) pleadings cannot be based upon information and belief."). Allegations pled on "information and belief," with no additional supporting allegations, as here, do not pass muster. *Bowen v. adidas Am., Inc.*, 416 F. Supp. 3d 574, 578 (D.S.C. 2019) (holding as insufficient pleading on information and belief the allegation that defendant "reviewed and approved sham invoices"); *Lima One Cap. LLC v. DAC Acquisitions LLC*, No. 6:19-CV-03547-DCC, 2020 WL 5816739, at *4 (D.S.C. Sept. 30, 2020) (holding as insufficient a statement pled on information and belief that a loan originator "creat[ed] fraudulently altered documents").

Despite this well-settled law, the Defendant asserts two identical counterclaims for "fraud

and misrepresentation." They appear to be based on two sets of (murky) fact patterns that do not demonstrate an entitlement to relief under Rule 8, let alone the heightened pleading standard pled in Rule 9. They do not plead the contents of any alleged fraudulent statements. They do not plead when or where they were uttered. They do not plead why or how they were uttered, let alone any of the required elements of fraud under South Carolina law, such as the requisite intent or damages. Rule 9(b) was designed, among other things, to prevent persons facing fraud claims from guessing as to what they did that was allegedly fraudulent. But all Wilshire's complaint consists of is rank speculation as to purportedly fraudulent conduct that isn't even fraudulent.

In order to prove fraud, a plaintiff has the burden of proving, by clear and convincing evidence, each of the following elements:

> (1) the defendant made a representation; (2) the representation was false; (3) the representation was material; (4) the defendant knew the representation was false or recklessly disregarded its potential falsity; (5) the defendant intended that Plaintiff act upon the representation; (6) Plaintiff understood the representation to be true; (7) Plaintiff relied on the truth of the representation; (8) Plaintiff had a right to rely on the truthfulness of the representation; (9) Plaintiff suffered a consequent and proximate injury as a result.

*First State Sav. & Loan v. Phelps,* 385 S.E.2d 821, 824 (S.C. 1989).

As best Mr. Connor can make out, Wilshire first seems to claim that Mr. Connor's feigning interest with the caller in its real estate services constituted fraud. As explained above, that's not fraud; all the Plaintiff was doing was identifying the caller on a call that was illegal *from the moment it was placed*, and not because of anything Mr. Connor said or did on the call. And insofar as the first fraud claim contends that Mr. Connor somehow failed to mitigate his damages, Wilshire is unable to plead the existence of a cognizable duty giving rise to a fraud claim. *See, e.g.*, *Powell v. W. Asset Mgmt.*, 773 F. Supp. 2d 761, 764 (N.D. Ill. 2011) ("courts that have considered whether a plaintiff has a duty to mitigate damages under Section 227 of the TCPA have found there is no such duty.") (citations omitted). For that matter, even taking its threadbare allegations as true, Wilshire pleads no facts giving rise to any of the elements of fraud

under South Carolina law, including, but not limited to, materiality, reliance, intent, a right to rely on the representation, and damages. Defendant is unable to point to a *single case* holding that a telemarketer had a right to rely on statements made by a called party in an illegal call that the telemarketer itself initiated illegally. That's because none exist, and the cases addressing a called party's conduct on the call have explicitly held the opposite.

In any event, the main point remains in that there is nothing wrong with a consumer advocate posing as an interested customer in order to enforce federal law and to discover the identity of those responsible for contacting them. "Testers," who pose as interested individuals in order to identify other victims in the housing and employment context "usually are praised rather than vilified." *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 374-75 (1982); *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977)). The Federal Trade Commission, which is charged with the enforcement of federal telemarketing laws, regularly has investigators pose as potential customers, and courts have endorsed that approach. *See, e.g.*, Consent Decree, *United States v. Credit Bureau Collection Services*, No. 2:10-cv-169, Doc. No. 3, § X (S.D. Ohio Feb. 24, 2010) (authorizing FTC to use "lawful means," including "posing as consumers and suppliers" in order to investigate compliance with federal law).

Wilshire's second counterclaim for fraud, sounding in a purported violation of South Carolina's Unfair Trace Practices Act, should also be dismissed with prejudice. As an initial matter, the allegation that the Plaintiff is allegedly "operating an enterprise . . . for the purpose of generating TCPA claims," without any of the purported factual details of the so-called "enterprise," falls far short of the factual specificity required to state a claim for fraud or violation of the UTPA under Rule 8, let alone Rule 9. But even if the Defendant were able to

plead the requisite acts (which it cannot, because that allegation is utterly false), the Defendant fails on the statutory "hook" on at least three points, rendering the claims unsalvageable. *First*, and as an initial matter, a UTPA claim is a statutory claim with statutory damages; it does not sound in fraud. *Second*, and more importantly, UTPA does not apply to individuals like Mr. Connor. The Act prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. CODE § 39-5-20(a). By its plain text, the UTPA applies to the use or employment of unfair *trade practices* in "trade or commerce;" it does not apply to private disputes as between private actors not affecting the public interest. *Orangeburg Pecan Co. v. Farmers Inv. Co.*, 869 F. Supp. 359, 360 (D.S.C. 1994); *Bessinger v. Food Lion, Inc.*, 305 F. Supp. 2d 574, 579 (D.S.C. 2003).

*Thirdly*, and although an issue of first impression, a plaintiff seeking to enforce his statutory rights as permitted under federal and state law is not using or employing any trade practices, let alone in the conduct of trade or commerce. Litigation is "not trade or commerce," nor "any part of commerce." *See Stout v. Pratt*, 12 F. Supp. 864, 867 (W.D. Mo. 1935), *aff'd*, 85 F.2d 172 (8th Cir. 1936) (holding that commerce is limited in definition and scope). As Court observed in *Gustafson v. Springfield, Inc.*, 282 A.3d 739, 750 n.15 (Pa. 2022):

> It is unfathomable how commerce — the free exchange of goods and services across state lines and intercourse between the parts of the nation — includes litigation — the "process of carrying on a lawsuit," i.e., a "proceeding instituted for the purpose of enforcing a right or otherwise seeking justice." BLACK'S LAW DICTIONARY at 1075, 1663 (10th ed. 2014) (quoting GARNER'S DICTIONARY OF LEGAL USAGE at 862-63 (3d ed. 2011)). **Litigation is not commerce.**

Given Wilshire has not shown any of the elements of fraud, least among them who committed said fraud, what was allegedly fraudulent, or how there are any damages, the counterclaim for fraud must be dismissed. No amount of repleading will save Wilshire either, because even assuming that the conduct alleged did occur and that all the other elements of fraud

are satisfied, Wilshire does not plead any conduct that rises to the level of a fraudulent representation. Instead, all it proves (if anything) is the affirmative defense of consent. Because Wilshire's allegations in its Counterclaim do not come anywhere near meeting the particularity standard of Rule 9(b) and those statements it does make are insufficient to constitute fraud, its fraud counterclaim must be dismissed under Rule 12(b)(6).

## CONCLUSION

For the foregoing reasons, Wilshire's Counterclaims should be dismissed with prejudice.

> PLAINTIFF,
> By his attorneys,
>
> DAVE MAXFIELD, ATTORNEY, LLC
>
>
> By:     _s/ Dave Maxfield_____
> David A. Maxfield, SC Bar # 7163
> P.O. Box 11865
> Columbia, SC 29211
> 803-509-6800
> 855-299-1656 (fax)
> dave@consumerlawsc.com
>
> Anthony I. Paronich
> Paronich Law, P.C.
> 350 Lincoln Street, Suite 2400
> Hingham, MA 02043
> (508) 221-1510
> anthony@paronichlaw.com

DATED: December 23, 2024